LOTTINGER, Judge.
This is an executory process. In suit number 11440, on the docket of this court, defendant, New Communities, Inc. (New), and intervenor, J. E. F. Developers, appeal from a judgment of the trial court dismissing an exception of no right of action as well as dismissing a petition for injunction.
Suit number 11477 on the docket of this court is concerned with alternative writs of mandamus, certiorari and prohibition issued on the application by Tri-South Mortgage Investors (Tri-South) in connection with the rule to test a surety on a suspensive appeal bond.
Tri-South, styling itself as a real estate investment trust (REIT) authorized to appear pursuant to LSA-R.S. 12:302 filed this executory process to enforce a mortgage with an alleged $2,363,834.24 balance together with accrued and unpaid interest affecting certain immovable property located in Terrebonne Parish, Louisiana, near Morgan City.
In filing the exception of no right of action, New contends that neither the plaintiff nor any of its trustees are qualified to do business in Louisiana, and thus have no right to avail themselves of the courts of this state, and further, that the trustees and not the trust are the proper party plaintiffs pursuant to LSA-C.C.P. art. 699.
Plaintiff argues that despite the exception of no right of action filed by New, a REIT is not required to qualify to do business in Louisiana if its activities fall within the purview of LSA-R.S. 12:302. This particular statute provides a general exemption to foreign corporations or business associations from qualifying to do business in this state for the transactions of certain business activities. One of the businesses exempted is a “real estate investment trust as defined by R.S. 12:491 et seq., or a business or trust company organized under the laws of any state * * * .” We agree generally with plaintiffs argument, that because it is either a REIT or a trust company organized under the laws of a sister state, it is exempt from qualifying to do business in Louisiana for the purpose of making loans, acquiring mortgages, and acquiring immovable property securing such loans under foreclosure sale or in lieu of foreclosure. LSA-R.S. 12:302 K(l) & (3). However, the second portion of the exception of no right of action concerns itself not with whether plaintiff must be qualified to do business in Louisiana, but rather, that the trustees are the proper party plaintiffs rather than the trust in this proceeding, and this portion of the exception has no bearing on being qualified to do business in Louisiana. Stated another way, the exception very simply argues that the plaintiff has not complied with the procedural rules of this state.
The issue then is whether Tri-South is a real estate investment trust and recognized as such by the laws of Louisiana. TriSouth is a trust organized and existing under the laws of the state of Massachusetts. In the course of its business, it negotiated and ultimately executed various documents with New, culminating in the mortgage upon which this executory process is based.
The general rule in Louisiana is that “the trustee of an express trust is the proper plaintiff to sue to enforce a right of the trust estate.” LSA-C.C.P. art. 699. However, LSA-R.S. 12:492 C allows a REIT as defined by LSA-R.S. 12:491 the “right to sue and be sued.” Therefore, it can be seen that the legislature has made an exception to the general rule as established by LSA-C.C.P. art. 699 as it relates to a REIT, in that it has allowed this particular type of trust to sue in its own name rather than have the trustee be the party plaintiff; it .has accorded to it juridical personality.
LSA-R.S. 12:491 B provides:
“A real estate investment trust is a trust created at law by an instrument under which property is held and managed by *1324 trastees for the benefit and profit of such persons as may be or may become the holders of transferable certificates evidencing beneficial interests in the trust estate, the holders of which certificates are entitled to the same limitation of personal liability extended to stockholders of private corporations, recognized as a real estate investment trust by the Internal Revenue Code of 1954, as amended.” (emphasis supplied)
The criteria established by the legislature to be recognized as a REIT in Louisiana is the same criteria that must be met by such a trust to be taxed as such under the Internal Revenue Code.
We conclude that the legislature in enacting LSA-R.S. 12:491 et seq., and in particular setting the criteria as that established by the Internal Revenue Code intended this criteria to be applicable not only to REIT’s organized in Louisiana but as well as to REIT’s organized in sister states but doing business in Louisiana, otherwise, it would be treating domestic REIT’s more strenuously than foreign REIT’s. Therefore, before it can sue in its own name in Louisiana rather than the name of its trustee or trustees, it must meet the criteria of a REIT as established by LSA-R.S. 12:491. The question remaining is whether TriSouth was a REIT recognized as such by the Internal Revenue Code at the time that it filed the petition for executory process on January 16, 1976.
At the time that LSA-R.S. 12:491 et seq. was enacted, as well as at the time suit was filed, the Internal Revenue Code, and in particular Section 856, provided that in order for a trust or other entity to be taxed as a REIT, it must elect this tax status, and it must also meet certain objective requirements. Once the election was made, it was irrevocable for the tax year and all succeeding years. However, as pointed out by the expert witnesses, if the REIT failed to meet the objective requirements in any one tax year, then it was not taxed as a REIT in that taxable year, but rather was taxed as it ordinarily would have been taxed. If in the following year it again met the objective requirements of the Internal Revenue Code, then it was again taxed as a REIT.
Plaintiff bases its entire opposition to the exception of no right of action on the proposition that once the election to be taxed as a REIT is made, it is irrevocable, and thus the trust is a REIT until liquidation, dissolution or reorganization occurs. We do not, however, agree that this is what the Louisiana Legislature intended in the enactment of LSA-R.S. 12:491 when it provided that a real estate investment trust would be one that is recognized as a real estate investment trust by the Internal Revenue Code of 1954. We conclude that what the legislature intended was that the word “recognized” be synonymous with the word “taxed.” Therefore, we interpret LSA-R.S. 12:491 to mean that as long as the trust is taxed by the Internal Revenue Service as a REIT, then it is recognized in Louisiana as a REIT. Otherwise, the special benefits and provisions granted to REIT’s by LSA-R.S. 12:491 et seq. could be circumvented by simply making the election and being taxed as such initially by the Internal Revenue Service, but never being taxed as such again. We cannot conceive that the legislature would have ever intended such a result. We reach this conclusion understanding full well that on October 4, 1976, the Tax Reform Act of 1976 was signed into law which in part allows the revocability of the election to be taxed as a REIT, thus destroying the irrevocability concept.
The factual question that then must be answered is whether plaintiff was to be taxed as a REIT in the year that suit was filed. Mr. Stanley H. Rose, III, a tax specialist with Price, Waterhouse & Company, of Atlanta, Georgia, who was responsible for the preparation of the tax returns of plaintiff, and the expert witness offered by Tri-South, testified that the plaintiff did not meet the requirements to be taxed as a *1325 REIT for 1975, and that in answer to a question by the court, he stated that from his knowledge of the first and second quarters of 1976, “it will not be taxed as a REIT for 1976.” We realize full well that when Mr. Rose testified before the trial court, the plaintiffs tax return for 1976 had not as of that time been filed, however, we must conclude from the testimony of Mr. Rose that Tri-South would not be taxed as a REIT for 1976. Therefore, since plaintiff would not meet the requirements of the Internal Revenue Code for the tax year of 1976, the year suit was filed, it could not avail itself of the special provisions of suing in its own name rather than the name of its trustee or trustees.
The above discussion of the exception of no right of action may seem overly detailed and technical, however, inasmuch as executory process is a harsh remedy, the defendant in an executory process has every right to expect and demand that plaintiff proceed properly. Stated another way, in an executory process, plaintiff must dot all his “i’s” and cross all his “t’s”, otherwise he may find himself out of court.
We realize of course that “when the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection cannot be so removed, or if plaintiff fails to comply with the order to amend, the action shall be dismissed.” LSA-C.C.P. art. 934. We do not deem this such a situation as to allow an amendment to substitute the proper party plaintiff.
In view of the foregoing, it is unnecessary for us to consider plaintiffs use of executory process, and the alternative writs issued in suit number 11477 have now become moot.
Therefore, for the above and foregoing reasons the judgment of the trial court on the exception of no right of action is reversed, and plaintiff’s suit is dismissed. All costs in both the trial and this court are taxed to plaintiff-appellee.
REVERSED AND DISMISSED.